*E-Filed 3/25/15*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN RICHARD MARTINEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>R.K. SWIFT, et al.,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　／ | No. C 13-3973 RS (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Plaintiff, a state prisoner proceeding pro se, filed this federal civil rights action under 42 U.S.C. § 1983 in which he claims that his jailors at Pelican Bay State Prison violated his First and Fourteenth Amendment rights by withholding incoming mail they deemed obscene and sexually explicit. Defendants have filed a combined motion to dismiss and for summary judgment (Docket No. 11) on several grounds, including that plaintiff failed to exhaust his administrative remedies before filing suit. Defendants have presented evidence in support of their motion, and provided plaintiff with the required warnings under *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc). Plaintiff has not shown evidence precluding summary judgment. Accordingly, defendants' motion is GRANTED as to all claims against

all defendants.

## BACKGROUND

The following factual allegations are undisputed unless specifically noted otherwise. In October 2012, fifteen photographs, a photograph catalog and an order form from "South Beach Singles" were mailed to plaintiff, and inspected upon receipt by Pelican Bay Correctional Officer Healy, who deemed the images obscene and sexually explicit. He confiscated the items, initiated the formal process to determine what would happen to the items, and sent the appropriate form to Correctional Officer R.K. Swift, who also found the items obscene and approved Healy's formal determination. Swift formally informed plaintiff that the items had been "disapproved" and were being withheld. Plaintiff asked that the prison hold the items pending an appeal of Swift's decision. The items were then reviewed by Harlan, a correctional officer, who later interviewed plaintiff as part of the appeal process. Plaintiff alleges, and defendants dispute, that during this interview, Harlan agreed that the photos were not obscene, but he (Harlan) could not "go against the squad." Plaintiff further alleges that Harlan told him to debrief so that he could then receive the photos.

In the current action, plaintiff alleges claims against Swift, Harlan, and the warden of Pelican Bay, Greg Lewis. He asserts that they violated his First Amendment right to possess the material and his due process rights in the formal proceedings to confiscate the material.

## DISCUSSION

### I.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

## II.   Exhaustion of Claims Against Harlan

Defendants have presented evidence that plaintiff did not administratively exhaust his claims against Harlan before filing suit. Prisoners must properly exhaust their administrative remedies before filing suit in federal court. "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). The PLRA exhaustion requirement requires "proper exhaustion" of all available administrative remedies. *Id.* at 93.

The State of California provides its prisoners the right to appeal administratively "any policy, decision, action, condition, or omission by the [CDCR] or its staff that the inmate . . .

can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 CCR § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, submitted on a CDC 602 inmate appeal form; (2) first formal level appeal, to an institution appeals coordinator; (3) second formal level appeal, to the institution warden; and (4) third formal level appeal, to the Director of the CDCR. *See id.* § 3084.7; *Brodheim v. Cry*, 584 F.3d 1262, 1264–65 (9th Cir. 2009). An inmate's obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance. *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). To grieve an issue against an individual, the grievance must list all staff members involved and their involvement. *See* 15 CCR § 3084.2(a)(3).

Plaintiff did not exhaust his claims against Harlan before filing suit. It is undisputed that between October 2012 and August 2013, plaintiff filed thirteen inmate grievances on a variety of matters. (Defs.' Mot. for Summ. J. ("MSJ"), Townsend Decl. ¶ 17.) Of these, only four reached the final level of review. (*Id.*, Zamora Decl. ¶ 9.) Only one of these four grievances was about the interception and disapproval of the photographs. (*Id.*, Townsend Decl. ¶¶ 16–17, Exs. A–C.) This grievance does not mention Harlan, or describe with any specificity his actions or words. Rather, the grievance related to an unnamed gang investigator's disapproval of photographs plaintiff ordered from a catalogue. (*Id.*, Ex. B.) Because it fails to mention Harlan, or provide a specific description of his actions or words, this grievance cannot satisfy the exhaustion requirement. *See* 15 CCR § 3084.2(a)(3). According to Supreme Court authority, in order to exhaust administrative remedies properly, inmates must comply with the applicable procedural rules — here, the naming of the specific individuals whose actions gave rise to the grievance — because administrative exhaustion is governed by the prison grievance process itself, not by the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford*, 548 U.S. at 88.

Plaintiff does not discuss or even mention exhaustion in his opposition to the motion for summary judgment, except to say that he "does not oppose Defendant Harlan being dismissed from this action." (Opp. at 7.) In his complaint, he says without elaboration that he exhausted his administrative remedies. (Compl. at 4.) This undetailed assertion is not sufficient to create a genuine issue of material fact. On this record, he has offered no evidence that he exhausted his administrative remedies before bringing this civil rights action, and he offers no reason that the exhaustion requirement should be excused. He has not, then, shown evidence that precludes summary judgment. Accordingly, defendants' motion for summary judgment is GRANTED in favor of Harlan as to all claims.

## III.     First Amendment Claim

In his complaint and in his opposition, plaintiff claims that he does not challenge the constitutionality of the regulation under which defendants seized the materials. (Compl. ¶ 21; Opp. to MSJ at 3.) Rather, he contends that the materials do not qualify as sexually explicit or obscene under the regulations. (*Id.*) He asserts that the photographs, order form, and photograph catalog "do not show frontal nudity, including the exposed female breast and/or genitalia of either gender." (Opp. at 3.) Nor do these materials show "actual penetration of the vagina or anus, or contact between the mouth and the genitals in a patently offensive way." (*Id.* at 5.)

Defendants assert that the photographs qualify as sexually explicit and obscene because they "display *representations of* explicit sexual acts and positions, including simulations of sexual penetration." (Reply at 6.) The order form and brochure are prohibited because "they alert inmates as to where they can obtain obscene and sexually explicit materials." Cal. Code Regs. tit. 15, § 3006(c)(15).

California inmates are barred from possessing material that is obscene and sexually explicit. Cal. Code Reg. tit. 15, § 3006. Obscene materials are those which to the average person applying contemporary statewide standards appeals to the prurient interest. *Id.* § 3135(d). It is also material "which taken as a whole, depicts or describes sexual conduct,

and lacks serious literary, artistic, political, or scientific value." *Id.* §§ 3135(d), 3006(c)(15), 3006(c)(15)(A), 3006(c)(17). This standard applies to sexually explicit material that shows frontal nudity including personal photographs, drawings, and magazines and pictorials that show frontal nudity or portrays, displays, describes, or represents penetration of the vagina or anus, or contact between the mouth and genitals. *Id.* §§ 3135(d)(1)–(2), 3006(c)(17).

Summary judgment will be granted in favor of defendants. The Court has reviewed the materials, which were submitted under seal, and concludes that the photographs do show *representations of* penetration of the vagina and anus, and other simulated sexual positions and acts, and therefore are prohibited by the prison regulations. Cal. Code Regs. tit. 15, §§ 3135(d)(1)–(2), 3006(c)(17). Representation of such acts is sufficient. Therefore, plaintiff's contention that they do not show frontal nudity or actual penetration is unavailing. Because the photographs are obscene and sexually explicit, the order form and catalogue, which alert inmates where they can obtain more such materials, are also prohibited by prison regulations. *Id.* § 3006(c)(15).

Plaintiff claims that he is not challenging the constitutionality of the regulations, which he would be foreclosed from doing under *Turner v. Safley*, 482 U.S. 78 (1987). Although prisoners have a First Amendment right to send and receive mail, prison officials may adopt regulations or practices that impinge on a prisoner's First Amendment rights if the regulations are "reasonably related to legitimate penological interests." *Id.* at 89. *Turner* sets forth four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the right that remain open to prison inmates"; (3) whether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives." *Id.* at 89–90 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). A

plaintiff challenging the law or regulation bears the burden of proving the prison policy is invalid. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Also, federal courts must accord substantial deference to prison administrators because they "bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.*

The regulations satisfy the first *Turner* factor. Prohibiting inmates from possessing and receiving obscene and sexually explicit materials furthers the prison's interest in protecting staff from sexual harassment and assaults, which can be encouraged by such materials. Prison security and reducing sexual harassment are legitimate governmental interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999); *Freitag v. Ayers*, 468 F.3d 528, 532 (9th Cir. 2006).

The regulations also satisfy the second *Turner* factor because they allow prisoners an avenue to exercise their First Amendment right. The regulations allow educational, medical, scientific, or artistic materials containing sexually explicit material acquired by prison officials for use in libraries and other educational centers. Cal. Code Regs. tit. 15, § 3006(c)(17)(B)(1). Also, the regulations permit inmates to purchase such material (such as National Geographics or medical or art books), though possession of such materials must be approved by prison officials on a case-by-case basis. *Id.* § 3006(c)(17)(B)(2). Because inmates have an alternative means available, regulations banning frontal nudity, for example, have been found constitutional. *Mauro*, 188 F.3d at 1061.

The regulations also satisfy the third *Turner* factor by taking into account the effect on guards and inmates of accommodating the right. Allowing unlimited access would come at the cost of less liberty and safety of others because it would encourage sexual harassment of employees, and the bartering of such materials among inmates. *Id.* at 1062.

Regarding the fourth *Turner* factor, plaintiff bears the burden to show that the prison's response is exaggerated and that there are "obvious, easy alternatives." *Turner*, 482 U.S. at 90. Plaintiff offers no such alternatives because he does not challenge the constitutionality of

the regulations. Accordingly, defendants' motion for summary judgment as to the First Amendment claims is GRANTED.

## IV. Due Process Claim

Summary judgment will be granted in favor of defendants as to plaintiff's due process claim. Plaintiff admits that he received notice of the confiscation of the materials, was given an opportunity to be heard on the matter, and was given an interview following the filing of an inmate grievance about the withheld materials. (Compl. ¶¶ 10–11, 13–14.) Because he was given notice and an opportunity to be heard, plaintiff's due process rights were not violated.[1] *Brewster v. Bd. of Educ. of Lynnwood Unified Sch. Dist.*, 149 F.3d 971, 984 (9th Cir. 1998).

## CONCLUSION

Defendant's motion for summary judgment (Docket No. 11) is GRANTED. The Clerk shall enter judgment in favor of R.K. Swift, J. Harlan, and Greg Lewis as to all claims, terminate Docket No. 11, and close the file.

**IT IS SO ORDERED**.

DATED: March 25, 2015

RICHARD SEEBORG
United States District Judge

---

[1] It is doubtful, however, that plaintiff had a possessory right in the materials that would require that he receive due process after confiscation. (MSJ at 14.) Even if he had such a right, due process was satisfied, as noted above.